MYRON KENNETH THOMAS, BY HIS NEXT FRIEND, JUSTIN W. THOMAS v. QUEEN CITY COACH COMPANY

No. 68SC196

(Filed 18 June 1969)

1. **Negligence § 12—    last clear chance — burden of pleading and proof**
   To invoke the doctrine of last clear chance, it must be pleaded by plaintiff and the burden of proof is upon him.

2. **Negligence § 12—    pleading last clear chance**
   While plaintiff's pleadings need not contain the words "last clear chance"

THOMAS *v.* COACH CO.

in order to have the benefit of that issue, facts must be alleged and proof thereof offered which bring the doctrine into play under the circumstances of the particular case.

**3. Negligence § 12— pleading and proof of last clear chance**

Allegations and proof of "original negligence" on the part of defendant may, under some circumstances, be sufficient to bring the doctrine of last clear chance into play, provided the other elements of that doctrine are sufficiently alleged and proved.

**4. Automobiles § 86; Negligence § 12— last clear chance — sufficiency of evidence**

In this action for personal injuries sustained when a bicycle ridden by the minor plaintiff collided with defendant's bus at an intersection controlled by traffic lights, the court did not err in failing to submit the issue of last clear chance where plaintiff's evidence tended to show that defendant's bus was traveling toward the intersection at 35 to 40 m.p.h. in a 55 m.p.h. zone along a dual-lane highway divided by a median, that plaintiff had not yet reached the median at the intersection when the bus driver first saw him, that when plaintiff continued to move slowly through the median and reached the center thereof, the bus driver blew his horn, the bus being only 180 to 200 feet from the intersection at that time, that plaintiff rode his bicycle through the red light into defendant's lane of travel, and that the bus driver applied his brakes but was unable to stop before striking plaintiff, the evidence being insufficient to show that the bus driver had sufficient time to avoid the collision after he discovered that defendant was moving into a position of peril to which he was inadvertent.

**5. Negligence § 12— last clear chance**

To invoke the doctrine of last clear chance where it is shown that plaintiff, even though not yet in position of peril, is negligently moving into a position of peril and is inadvertent to that fact, the evidence must also show that when defendant knew or in the exercise of due care should have known of the plaintiff's situation, defendant still had time and the means to avoid the injury but negligently failed to do so.

APPEAL by plaintiff from *McConnell, J.,* February 1968 Session of UNION Superior Court.

This is a civil action to recover damages for personal injuries suffered by the minor plaintiff as result of a collision between defendant's bus and plaintiff's bicycle which occurred on 6 May 1966 at the intersection of Walkup Avenue and Highway No. 74 in the city of Monroe, N. C. At this location Walkup Avenue is a paved street 22 feet wide running north and south, with one lane for northbound and one lane for southbound traffic. Highway No. 74 runs east and west and is a dual-lane divided highway with two lanes for eastbound and two lanes for westbound traffic, each 24 feet wide, separated by an unobstructed grass median 30 feet wide. Approaching the intersection on Highway No. 74 from the east and traveling

in the westbound lanes, Highway No. 74 is straight and slightly down-hill and there is an unobstructed view of the intersection for 800 feet or more. The speed limit on Highway No. 74 in this area is 55 miles per hour. Traffic at the intersection is controlled by traffic lights emitting alternate red, yellow and green lights. When the traffic control signals facing east and west on Highway No. 74 are green, they are red facing north and south on Walkup Avenue. The traffic lights facing north and south on Walkup Avenue are located in the center of the median at the point Walkup Avenue passes through Highway No. 74. At the time of the collision, a hard, blowing rain was falling and the highway and street were wet and slippery. The wind and rain were blowing toward the southwest. Defendant's bus approached the intersection traveling west on the inside westbound traffic lane of Highway No. 74. Plaintiff approached the intersection riding his bicycle north on Walkup Avenue. The point of impact was about the center of the southbound lane of Walkup Avenue and in the southern edge of the inside westbound lane of Highway No. 74.

Plaintiff alleged that the collision occurred as a result of the bus driver's negligence in operating the bus at a speed greater than was reasonable and prudent under the conditions then existing, in failing to reduce speed in approaching and crossing an intersection when special hazards existed, and in failing to keep a proper lookout. Paragraph 8 of plaintiff's amended complaint is as follows:

"8. That the bus operated by the defendant's agent failed to give any warning of its approach whatsoever until it was less than 200 feet from the point of the collision, and that the same was being driven at a rate of speed which was greater than that proper under the circumstances then and there existing, and that, although the plaintiff riding on his bicycle was in plain view of the defendant's agent, who was not looking toward the bus, and that the plaintiff was a young boy on a bicycle, all of which was known, or should have been known by the bus driver, the defendant's agent failed to apply his brakes, but wrongfully, unlawfully and negligently continued on down the highway and into the plaintiff, knocking him approximately thirty feet; that the defendant's agent failed to apply his brakes or to blow the horn of the bus in time to avoid the collision, although the plaintiff was in plain view; that a portion of the highway was unobstructed with ample room for the defendant's agent to have avoided the collision if he had attempted to do so, but he continued into the intersection and into the plaintiff when he could have avoided the accident had he used another part of the highway or exercised proper care and maintained a proper lookout;

that the negligence of the defendant's agent, as herein set out, was a proximate cause of the collision and of the damages sustained by the plaintiff."

Defendant answered, denied negligence on its part, and pleaded contributory negligence on the part of the plaintiff in failing to stop for a red light.

Plaintiff offered three witnesses who testified concerning the collision. Plaintiff himself testified: On 26 May 1966 he was twelve years old and in the sixth grade. About 3:20 that day he got out of school. It was pouring rain. He got on his bicycle and started riding north on Walkup Avenue toward his house, which was across the boulevard (Highway No. 74). When he got to the boulevard, he was undecided whether to go straight across toward his home or to turn left down the boulevard. When he was about 120 feet away, he looked at the traffic light facing him and it was green. He put his head back down and kept on going. As he approached the intersection, he didn't know whether to turn left or to keep on going straight toward his home, because it was raining so hard. After that he didn't remember anything. The next thing he remembered was being in the hospital.

A Mrs. Janet Tolley testified: That she was going south on Walkup Avenue. The traffic light turned red and she stopped at the Walkup Avenue-Highway No. 74 intersection. She saw the plaintiff approaching from the other direction on his bicycle. He was coming slowly, bent down over his bicycle. When she first saw him, he was south of Highway No. 74 coming into the intersection in the east lane of Walkup Avenue. Plaintiff was coming slowly, and he kept coming across the road. He still had his head down, but he was looking towards the left, and he kept coming to his left across the road. She heard a horn, and saw the bus coming. She looked back towards the plaintiff and he glanced up and turned his head for just a second, and it appeared that he was deciding what to do or was frightened. It looked like he tried to turn his bicycle wheel to the left. Just about that time the bus passed between Mrs. Tolley and the plaintiff, and Mrs. Tolley did not see the bus hit plaintiff. The bus was on the inside westbound lane. The last time she saw plaintiff before the impact, he was approaching the westbound lane of Highway No. 74 about ten feet away from the westbound lane. The bus was approximately 180 to 200 feet from the intersection when she heard the horn. It was traveling approximately 35 to 40 miles an hour. When she heard the horn, plaintiff was a little over halfway in the median in the intersection. During the time she saw plaintiff, he was going

at a slow rate of speed and did not stop. She did not hear any tires or squeaking of brakes, and was not conscious whether the bus reduced its speed before it got to the intersection. She was not aware of any other vehicles in the westbound traffic lane. During the period of time that she saw plaintiff before the impact, he never looked in the direction of the bus.

The police officer who investigated the accident testified that the bus driver had told him: He was approaching the light driving approximately 35 miles an hour, coming along with the other traffic. When he first saw the boy on the bicycle the boy was about the center of the inside, or northern, lane of the eastbound lanes, and the bicycle was traveling in a northerly direction very slowly. He thought the bicycle was going to stop. Then he realized that it wasn't and he sounded his horn and applied brakes, but couldn't avoid the accident. He didn't have time to stop and had no way he could avoid it. This police officer also testified that there were marks on the outside of the bus around to the left front side, right by the driver. No evidence was presented by defendant.

The case was submitted to the jury on issues as to defendant's negligence and plaintiff's contributory negligence. The jury answered both issues in the affirmative, finding defendant negligent and plaintiff contributorily negligent. The plaintiff requested and the court refused to submit the following issue:

"Did the defendant have the last clear chance to avoid the accident, as alleged in the Complaint?"

From judgment that plaintiff recover nothing by this action, plaintiff appealed.

*Clark & Huffman, by Richard S. Clark for plaintiff appellant.*

*Myers, Sedberry & Collie, by J. C. Sedberry and Charles T. Myers; and Smith, Griffin, Smith & Clark, by C. Frank Griffin for defendant appellee.*

PARKER, J.

[1, 2]  Plaintiff assigns as error the refusal of the trial court to submit an issue as to last clear chance. To invoke that doctrine, plaintiff must plead it and the burden of proof is upon him. *Exum v. Boyles,* 272 N.C. 567, 158 S.E. 2d 845; *Bailey v. R. R.,* 223 N.C. 244, 25 S.E. 2d 833. Plaintiff's pleadings need not contain the words "last clear chance," but to have the benefit of that issue it is necessary that facts be alleged and proof thereof offered which bring the doc-

trine into play under the circumstances of the particular case. See, Annot., 25 A.L.R. 2d 257.

[3] In the present case, after defendant by its answer had pleaded the defense of contributory negligence, plaintiff filed no reply. Plaintiff contends that the allegations of his complaint are sufficient to raise the issue of last clear chance, pointing particularly to paragraph 8 of the complaint. It is true that allegations and proof of "original negligence" on the part of the defendant may, under some circumstances, be sufficient to bring the doctrine of last clear chance into play, provided the other elements of that doctrine are sufficiently alleged and proved. *Exum v. Boyles, supra.* In the present case, however, it is questionable whether such other elements were sufficiently alleged in plaintiff's complaint. Only by the most liberal construction of paragraph 8 of the complaint can it be said that plaintiff has alleged facts from which it may be inferred that the collision occurred when plaintiff had gotten into a position of helpless peril or had gotten into or was moving into a position of peril to which he was inadvertent, and that after defendant discovered or in the exercise of due care should have discovered plaintiff's situation, defendant had both the time and means to avoid the injury and negligently failed to do so. We do not, however, find it necessary to pass upon the sufficiency of plaintiff's pleading, since in our view the trial court was clearly correct in refusing to submit an issue as to last clear chance for the reason that the issue did not arise on the evidence presented.

[4] All of the evidence tended to show: The bus was moving west on the inside westbound lane of Highway No. 74, approaching the intersection with Walkup Avenue. The light facing the bus was green. It was moving with the other traffic at 35 to 40 miles per hour, well within the posted speed limit. While it was raining, there was no evidence from which the jury could find that the bus was traveling at an unsafe speed under the conditions then existing. When the driver first saw plaintiff, he was riding his bicycle slowly northward on Walkup Avenue and was about the center of the inside, or northern, lane of the eastbound traffic lanes on Highway No. 74. At that point the plaintiff on his bicycle had yet to travel across the remainder of the eastbound inside lane and across all of the 30-foot median before he would reach any position of peril as far as the bus was concerned. The traffic light in the center of the median facing the plaintiff was red. The bus driver, in the exercise of due care, was at that time reasonably entitled to assume that plaintiff would stop within the median. *Raper v. Byrum,* 265 N.C. 269, 144 S.E. 2d 38; *Hawes v. Refining Co.,* 236 N.C. 643, 74 S.E. 2d 17. Had the plaintiff

done so, he would have been entirely safe so far as the bus was concerned. When plaintiff continued to move slowly through the median and had reached the center thereof, the bus driver blew his horn. At that time the bus was 180 to 200 feet from the intersection and traveling at 35 to 40 miles per hour. So traveling, the bus would reach the intersection in less than four seconds. Only thereafter, when the plaintiff despite the warning signal continued to move toward a place of danger, can it be said that the bus driver in the exercise of due care should have known that plaintiff was inadvertent to his peril and might continue to move toward and into a place of danger. By that time a substantial portion of the four seconds required for the bus to reach the intersection must have elapsed. Certainly the evidence would not support a finding that the bus driver then had sufficient time remaining to take effective action to avoid the collision.

[5]    There is a question whether plaintiff's evidence was sufficient to submit the first issue relative to defendant's negligence to the jury. It is clear that it was not sufficient to require submission of an issue as to last clear chance. While the doctrine can be invoked where it is shown that the plaintiff, even though not yet in a place of peril, is negligently moving into a position of peril and is inadvertent to that fact, this is true only if the evidence also shows that when the defendant either knew, or in the exercise of due case should have known of the plaintiff's situation, defendant still had sufficient time and the means to avoid the injury and negligently failed to do so. Here, there was no evidence that the bus driver had sufficient time remaining. There was no error in the court's refusal to submit an issue as to last clear chance.

Plaintiff also assigns as error one portion of the judge's charge relating to the second issue. This portion, when considered contextually with the charge as a whole, could not have misled the jury. Considered as a whole, the charge correctly declared and explained the law arising on the evidence. The court explained fully the standard of care required of a child of plaintiff's age and experience and the rebuttable presumption that he was incapable of contributory negligence. We find no prejudicial error in the trial.

No error.

BROCK and BRITT, JJ., concur.